Maurice D. GALLEHER, as Executor of the Last Will and Testament of Martha R. Coates, Deceased,

v.

Herbert D. GRANT and First National Bank in St. Petersburg, as Administrators with the Will Annexed of the Estate of Martha R. Coates

and

American Express Company, a New York organization; Chase Manhattan Bank, a National banking association; First Bank Stock Corporation, a Delaware corporation; Northern Minnesota National Bank of Duluth, a National banking association; Southern Company, a Delaware corporation; and Gray Drug Stores, Inc., an Ohio corporation.

No. 57 C 516.

United States District Court
N. D. Illinois, E. D.
March 12, 1958.

King, Robin, Gale & Pillinger, Chicago, Ill., for plaintiff.

Thompson, Raymond, Mayer, Jenner & Bloomstein, Chicago, Ill., for defendant, administrators.

Sidley, Austin, Burgess & Smith, Chicago, Ill., for corporate defendants.

LA BUY, District Judge.

The complaint is brought pursuant to 28 U.S.C.A. § 1655 to remove a cloud upon the title of the plaintiff in and to certain shares of corporate stock held in his possession and to recover accrued dividends upon said shares. The plaintiff is the Illinois ancillary executor and testamentary executor and trustee under the Will of Martha R. Coates and prays that the court order that title to said shares is vested in him as Executor under the Last Will and Testament of Martha R. Coates, Deceased, and the codicils thereto; that the court order the transfer of said shares to plaintiff and enter judgment for plaintiff for the accrued dividends.

All defendants have been personally served in accordance with § 1655, 28 U.S.C.A. The corporate defendants American Express Company, Chase Manhattan Bank, First Bank Stock Corporation and Northern Minnesota National Bank of Duluth have filed answers stating generally they are without knowl-

edge or information sufficient to form a belief as to most of the allegations of said complaint and that they are voluntarily appearing and are willing to transfer said stock and pay the dividends specified to the person determined by this action to be entitled thereto. Corporate defendants Southern Company and Gray Drug Stores, Inc., are in default for failure to appear and plead.

Defendants Herbert D. Grant and First National Bank in St. Petersburg, Florida, have filed their answer and counterclaim asking for declaratory judgment against the plaintiff as Illinois executor and testamentary trustee. In addition, defendants have filed a cross-claim pursuant to 28 U.S.C.A. § 1655 against the corporate defendants and plaintiff as Executor under the Will of Martha R. Coates, demanding transfer of said stock and payment of accrued dividends to them as the properly constituted domiciliary administrators of the decedent's estate.

Pending before the court for determination are the following motions:

## I

The defendants, Herbert D. Grant and First National Bank of St. Petersburg have filed their motion for summary judgment on their counterclaim for the reason that no genuine issue of material fact exists and they are entitled to declaratory judgment as a matter of law as to (1) whether the laws of Illinois provide that an Illinois ancillary executor must distribute assets under his control to the domiciliary administrator, and (2) whether the order of the Probate Court of Cook County entered December 28, 1956 ordering distribution of assets by Galleher as ancillary executor was contrary to law, without notice to them, and therefore null and void. It is contended that the Probate Court has no authority to order such a distribution upon the conclusion of ancillary administration and to distribute the same to anyone except the domiciliary administrators of the decedent's estate.

## II

Herbert D. Grant and First National Bank of St. Petersburg, defendants, have filed a motion for summary judgment on their cross-claim against the corporations and Galleher requesting determination as a matter of law (1) whether the shares of stock are assets located within the respective domiciles of the corporations issuing the same and that payments of dividends are governed by the laws of such states, and (2) whether the laws of such states require distribution of the shares to the domiciliary administrator of the decedent's estate. The plaintiff, Galleher, urges that said shares are assets having their situs in Illinois pursuant to Section 55 of the Probate Act, Ill.Rev.Stat.1958, c. 3, § 207 and under the doctrine of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, this court must follow the Illinois law that a personal representative, though ancillary, is vested with full legal title to personal property, having a situs in this state.

## III

The plaintiff, Maurice D. Galleher, has moved to dismiss the counterclaim for the reason this court does not have jurisdiction in that (1) the administration of the estate as to assets located in Illinois and their ultimate distribution is within the sole and exclusive jurisdiction and discretion of the Probate Court of Cook County; (2) that the order of the Probate Court entered December 28, 1956 is not void for lack of notice; (3) the federal district courts have no jurisdiction in probate matters; and, if the court should hold that it does have, such jurisdiction should not be exercised; and (4) the domiciliary administrators lack the capacity to sue on their counterclaim.

The following facts appear from the pleadings, affidavits and exhibits: Martha R. Coates, a resident of St. Petersburg, Florida, for more than ten years before her death on December 31, 1955, left a Last Will and Testament, and

two codicils thereto; she therein named Maurice D. Galleher, plaintiff herein, as executor and testamentary trustee. On or about May 3, 1955, Martha R. Coates directed Herbert D. Grant and the First National Bank in St. Petersburg, defendants and counterclaimants herein, to transfer from her safety deposit box certain securities which she owned and directed they be delivered to Maurice D. Galleher at Chicago; said securities were so delivered on May 19, 1955 and placed by Galleher in the vaults of the Continental Illinois Safe Deposit Company; the box ultimately showed Martha R. Coates as renter with access thereto by any two of three persons, i. e., Galleher, Grant and Heath; the securities remained there until January 16, 1956, when they were delivered to the Clerk of the Probate Court of Cook County. Said securities are inventoried in the Probate proceedings in Cook County.

On January 13, 1956 a petition for admission of the will to probate, signed by Galleher, was filed, and on January 19, 1956 Heath avers that at the request of Grant, he secured photostatic copies of the testamentary dispositions from the Clerk and mailed them to the defendant, Grant; on January 25, 1956 true copies of these testamentary dispositions were admitted to probate by the Court of the County Judge of Pinnellas County, Florida, and letters of administration with the will annexed were issued to Herbert D. Grant and First National Bank of St. Petersburg, Florida, which administration is not yet completed; that on February 9, 1956 the Probate Court of Cook County upon presentation of the original will and codicils appointed the plaintiff, Maurice D. Galleher, as the Illinois executor; that on December 26, 1956, the Cook County Probate Court records showed no appearance on behalf of Grant and the First National Bank or anyone, and no order had been entered by the Probate Court under Rule 60 of its rules; therefore, no notice was given to anyone prior to the presentation of Galleher's petition for instructions on December 28,

1956, which resulted in an order authorizing him to distribute the estate in accordance with the will and codicils; on January 10, 1957, a true copy of said order, together with a letter from Heath was sent to the attorney for the Florida administrator; on May 10, 1957 Galleher filed his first Account and Report showing he had distributed to himself as residuary trustee a portion of the residuary estate; on July 9, 1957 the Florida administrators filed their objections in the Probate Court of Cook County to said Account and Report stating that approval of said account should be delayed because of the pendency of the instant district court suit, or, in the alternative, that said account be disapproved and Galleher instructed to return to himself all such property and money distributed and thereafter ordered to distribute the same to the objectors as domiciliary administrators of the decedent's estate.

Before considering the defendants' motion for summary judgment on their counterclaim for declaratory judgment, the court will consider the merits of the plaintiff's motion to dismiss such counterclaim. That motion is ultimately premised on two basic concepts: (1) the federal courts have no jurisdiction over probate matters and, in addition, the same issues are pending before the Probate Court of Cook County; and (2) the Florida administrators lack capacity to sue and the counterclaim must be dismissed.

In Waterman v. Canal-Louisiana Bank & Trust Co., 1909, 215 U.S. 33, 43, 30 S.Ct. 10, 12, 54 L.Ed. 80, a general statement of a federal court's jurisdiction in probate matters is set forth as follows:

> "From an early period in the history of this court, cases have arisen requiring a consideration and determination of the jurisdiction of the courts of the United States to entertain suits against administrators and executors for the purpose of establishing claims against estate,

and to have a determination of the rights of persons claiming an interest therein. And this court has had occasion to consider how far the jurisdiction in equity of the courts of the United States in such matters may be affected by the statutes of the States providing for courts of probate for the establishment of wills and the settlement of estates. We will not stop to analyze or review in detail all these cases, as they have been the subject of frequent and recent consideration in this court. The general rule to be deduced from them is that, inasmuch as the jurisdiction of the courts of the United States is derived from the Federal Constitution and statutes, that, in so far as controversies between citizens of different States arise which are within the established equity jurisdiction of the Federal Courts, which is like unto the high court of chancery in England at the time of the adoption of the Judiciary Act of 1789, [1 Stat. at L. 73, chap. 20], the jurisdiction may be exercised, and is not subject to limitations or restraint by state legislation establishing courts of probate and giving them jurisdiction over similar matters. This court has uniformly maintained the right of Federal courts in chancery to exercise original jurisdiction (the proper diversity of citizenship existing) in favor of creditors, legatees, and heirs, to establish their claims and have a proper execution of the trust as to them. * * *

" * * * The courts of the United States, while they may exercise the jurisdiction and may make decrees binding upon the parties, cannot seize and control the property which is in the possession of the state court. * * * * "

And, in Markham v. Allen, 1945, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L. Ed. 256 the Supreme Court stated:

" * * * while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, * * * it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court."

■■ It is also a basic tenet of federal jurisdiction that it is not within its province to review state court decisions, nor do federal courts have supervisory or appellate jurisdiction; and, ordinarily a federal court will not and can not vacate, modify or annul a judgment or decree of a state court of competent jurisdiction. It is only in cases showing an extrinsic fraud in the procurement of such judgment or decree, or a want of jurisdiction shown by extrinsic facts which would warrant an interference by the federal court. Even in that event, no positive action is taken against the judgment or decree, but is only directed against the parties thereto. That same tenet must be considered in connection with the counterclaimant's prayer regarding the order of the Probate Court of Cook County which is a court created by state law.

In effect the counterclaim seeks a judgment from this court declaring the order of the Probate Court null and void for two reasons: (1) that it is contrary to the law of Illinois, and (2) that it was rendered without notice to interested parties. If these two contentions are sustained, the counterclaimants ask this court to enter an order allegedly in accordance with the laws of Illinois which would be directly opposite to that entered by the Probate Court. It is urged that the federal court can do this since it will not interfere with the ancillary administration in Cook County and would be effective only to declare

rights which would attach after, completion of the ancillary administration.

What is important, however, is that any order of this court of that nature will disturb and affect the possession of property in the custody of the executor under the direction of the County court. In Byers v. McAuley, 1892, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867, it was stated that an administrator appointed by a state court is an officer of that court and takes possession of the decedent's property in obedience to the orders of the court; that his possession is the court's possession, and cannot be disturbed by any other court. Wells v. Helms, 10 Cir., 1939, 105 F.2d 402; Kahl v. Chicago Title & Trust, D.C.Ill.1923, 299 F. 793; and see Kelleam v. Maryland Casualty Co., 10 Cir., 1940, 112 F.2d 940 reversed 312 U.S. 377, 61 S. Ct. 595, 85 L.Ed. 899.

■ The order of the Probate Court entered December 28, 1956 is not one which this court has jurisdiction to declare null and void. If the plaintiff's possession in the instant case is contrary to law, it is to be assumed that the state reviewing tribunals will correct such order and this court has no power or function to do so. Conceivably, also the Probate Court after hearing on the objections filed before it may enter a different order. The Florida administrators have asserted their objections thereto and that court has jurisdiction to resolve such objections which are, in the main, the same contentions raised in the instant counterclaim.

In Markham v. Allen, 1945, 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 relied on by the counterclaimants, it was held that a federal court would decree a right in property to be distributed after administration and such adjudication of rights is not an interference with property in the possession or custody of a state court. The instant counterclaim requests that this court set aside a court order which has determined that property in its custody remain in the possession of its state appointed officer for distribution.

■ Although the above would be sufficient ground for dismissal, the court also holds that the Florida administrators lack the capacity to maintain suit on their counterclaim. In the absence of statute or of exceptional circumstances a personal representative cannot sue in a state other than that of his appointment unless he complied with conditions imposed by the other state. Johnson v. Powers, 1890, 139 U.S. 156, 11 S.Ct. 525, 35 L.Ed. 112; Graham v. Lybrand, 7 Cir., 1905, 142 F. 109; Watkins v. Eaton, 2 Cir., 1910, 183 F. 384.

The court is therefore of the opinion that the plaintiff's motion to dismiss the counterclaim must be sustained. This ruling renders unnecessary any ruling on defendants' motion for summary judgment on their counterclaim.

The court next considers the defendants' motion for summary judgment on their cross-claim. A conclusion on that motion will necessarily effect a determination of the plaintiff's prayer in its complaint since there exists no genuine controversy with respect to the material facts.

■ Each of the litigants has invoked § 1655, 28 U.S.C.A. This section gives the federal courts a limited jurisdiction which contemplates actions classified under traditional concepts as actions in rem or quasi in rem as distinguished from those customarily labeled in personam. This grant of jurisdiction, however, must be considered within federal constitutional grants of jurisdiction for the section does not purport to give jurisdiction where it would not otherwise exist and simply prescribes certain procedures in cases where it does.

In resolving the defendants' motion for summary judgment and the plaintiff's rights under its complaint, the court must revert to some of the considerations which prompted a dismissal of the defendants' counterclaim.

■■ Because of the nature of this suit as disclosed by the pleadings, exhibits and affidavits, this court is confronted at the outset by two fundamental

doctrines which "restrict" federal jurisdiction. These are: (1) the rule of comity which denies one court the right to take property from another which has acquired prior and exclusive jurisdiction; and (2) the universal doctrine that, as between state and federal courts, only the court which renders a judgment has the power to set it aside. In the application of the latter doctrine, the stage reached in the instant probate proceedings is important as federal courts have no power to review state court decisions.

Under the first doctrine, it is a rule of general application that where property is in the actual possession of one court of competent jurisdiction, such possession cannot be disturbed by any other court. This doctrine has been affirmed again and again by the Supreme Court of the United States. Hagan v. Lucas, 1836, 10 Pet. 400, 9 L.Ed. 470; Taylor v. Carryl, 1857, 20 How. 583, 15 L.Ed. 1028; Peck v. Jenness, 1849, 7 How. 612, 12 L.Ed. 841; Ellis v. Davis, 1883, 109 U.S. 485, 3 S.Ct. 327, 27 L. Ed. 1006; Krippendorf v. Hyde, 1884, 110 U.S. 276, 4 S.Ct. 27, 28 L.Ed. 145; Covell v. Heyman, 1884, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390; Borer v. Chapman, 1887, 119 U.S. 587, 7 S.Ct. 342, 30 L.Ed. 532. It is also established that probate matters such as validity of a will and the administration of estates are proceedings in rem and are not among the "controversies" of which district courts may have jurisdiction under Article 3 of the Constitution and have been given jurisdiction under the statutes. Byers v. McAuley, supra; Smith v. Jennings, 5 Cir., 1915, 238 F. 48.

As noted previously, the Waterman case, supra, held a federal court has in personam jurisdiction in probate matters only when it will not and does not disturb the possession of the res in the Probate Court and although the latter court is bound to recognize an adjudication of rights by the federal courts, it retains full possession and control of the res. Thus, jurisdiction of federal courts is limited to a declaration of rights preceding distribution.

A basic principle in administration of estates is that an ancillary executor holds title to all the personalty within the state of his appointment. 34 C.J.S. Executors and Administrators § 999. If this court should assume to decide whether the property here involved is assets, it would assume the right to control the judgment and action of the Probate Court of Cook County in a matter exclusively within its jurisdiction; and, clearly in the instant case that determination must precede the determination of who has the title to these assets as between two personal representatives of an estate.

The Probate Court by whose order alone the executor would be authorized to distribute the assets of the estate has already ordered that the executor make distribution. If this court should proceed to adjudicate the issues here, the executor would be subject to diverse and conflicting decrees—that of the Probate Court directing him to distribute the funds of the estate in its custody and control and that of a federal court directing him to refrain and desist from distributing such funds to the legatees. As was pointed out in Moore v. Fidelity Trust Co., 3 Cir., 1905, 138 F. 1, 5, the direction and control by a probate court of an administrator in the performance of his duties "is an essential attribute of its jurisdiction" and such an administrator "should not be compelled to obey orders from two courts in respect to the administration of the same estate". It is enough that such court first acquired jurisdiction of the administration of the estate and that "possession of the assets of the estate was necessary to its proper administration in the court". [238 F. 55.] Smith v. Jennings, supra; Byers v. McAuley, supra; Garzot v. Rios De Rubio, 1908, 209 U.S. 283, 28 S.Ct. 548, 52 L.Ed. 794; Waterman v. Canal-Louisiana Bank & Trust Co., supra; Sutton v. English, 1918, 246 U.S. 199, 38 S. Ct. 254, 62 L.Ed. 664; Watkins v. Eaton, supra. So long as the property remains

in custodia legis, no other court can proceed with determination of a suit which may result in conflicting titles thereto.

In considering the second doctrine that federal courts cannot review, annul, modify or revise state court decisions, this court holds that any adjudication by it compels a determination of the validity and efficacy of the order of the Probate Court which grants full possession and control to the Illinois executor. While federal courts sitting in equity have rights in certain cases to quiet title, it does not follows that under the guise of administering such relief it will review proceedings of a state court. In the instant case, the Probate Court has by its order established certain property rights. This court cannot reach and determine the question of title without reviewing what has been done by the Probate Court of Cook County.

If any cloud on title exists, it appears to exist by virtue of the order of the Probate Court granting full right of distribution to the Illinois executor. This court is of the opinion that under § 1655, 28 U.S.C.A., the federal court cannot extend its jurisdiction where the cloud on title exists by virtue of a decree of another court since to do so would extend federal jurisdiction to review state court proceedings without meeting the traditional requirement that such state court judgment must be shown to be void by proof of extrinsic facts.

The court is of the opinion that the defendants' motion for summary judgment must be denied.

The court is further of the opinion that for all the foregoing reasons the plaintiff's complaint must be dismissed on the court's own motion for lack of jurisdiction.

An order has this day been entered sustaining plaintiff's motion to dismiss the counterclaim, denying defendants' motion for summary judgment on their cross-claim, and dismissing the plaintiff's complaint.